1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2   SARA WINSLOW (DCBN 457643)
    Chief, Civil Division
3   PAMELA T. JOHANN (CSBN 145558)
    Assistant United States Attorney
4
    450 Golden Gate Avenue, Box 36045
5   San Francisco, California 94102
    Telephone (415) 436-7025
6   Fax (415) 436-7234
    pamela.johann@usdoj.gov
7
    Attorneys for Defendant UNITED STATES
8   DEPARTMENT OF LABOR

9                           UNITED STATES DISTRICT COURT

10                         NORTHERN DISTRICT OF CALIFORNIA

11                                 OAKLAND DIVISION

12

13  SYNOPSYS, INC.,                        )  Case No. 20-cv-00693-KAW
                                           )
14            Plaintiff,                    )  **REPLY MEMORANDUM IN SUPPORT OF**
                                           )  **CROSS-MOTION FOR SUMMARY**
15       v.                                )  **JUDGMENT OF DEFENDANT DEPARTMENT**
                                           )  **OF LABOR**
16  UNITED STATES DEPARTMENT OF             )
    LABOR,                                 )  Date:        May 7, 2020
17                                          )  Time:        1:30 p.m.
              Defendant.                    )  Courtroom:   To Be Determined
18                                          )
    _____)  The Hon. Kandis A. Westmore
19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Throughout its opposition brief, Synopsys never adequately addresses the only issue presented in this reverse FOIA case:  whether DOL's decision to comply with a valid and binding court order mandating the release of Synopys's EEO-1 reports was arbitrary and capricious under the Administrative Procedure Act ("APA").  Instead, Synopsys tries to deflect attention from that dispositive issue by arguing that this Court's December 10, 2019 Order ("December 10 Order") in the direct FOIA action is stayed, implying that the Court can simply ignore the fact that it previously ruled that the EEO-1 reports are not covered by Exemption 4 and *must* be produced by DOL.  But the only agency action that the Court can review in this reverse FOIA case is DOL's decision to release the documents.  And DOL intends to release the documents only because it is required to so by the Court's December 10 Order.  Whatever DOL's prior position regarding the applicability of Exemption 4 to the EEO-1 reports, the Court's December 10 Order conclusively determined that those reports may not be withheld under FOIA.  It cannot be arbitrary and capricious for DOL to comply with a valid and binding court order.  Summary judgment should be granted in favor of DOL.

## II.     ARGUMENT

### A.     The Only Issue Before This Court Is Whether DOL's Anticipated Compliance With A Valid Court Order To Release The Documents Is Arbitrary And Capricious.

Synopsys's arguments in its opposition/reply, Dkt. No. 26, reveal how radically its position in this reverse FOIA litigation diverges from the appropriate APA framework.  Synopsys continues to misunderstand the nature and scope of this Court's APA review, and to mischaracterize the merits of its claim.  None of Synopsys's arguments address the only question at issue in *this case*: whether DOL's anticipated compliance with the Court's December 10 Order is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law."

#### 1.      The Stay Order Is Not Relevant To This Court's APA Review.

Synopsys continues to ignore the threshold question in this and every APA action:  what agency action is under review?  In arguing that the Court's December 10 Order has been stayed and the only "operative" order prevents the disclosure of the EEO-1 reports, Synopsys appears to be suggesting that DOL's anticipated disclosure is untethered to the Court's December 10 Order.  This argument is

contrary to both the allegations of Synopsys's complaint and to the actual agency action at issue in this case.  The operative allegation in the complaint ties the anticipated disclosure directly to the Court's December 10 Order:  "On January 28, 2020, DOL announced that it was not going to use its resources to appeal the order issued in *CIR v. DOL*, and that absent a stay or other court order it would be compelled to disclose the data sought no later than February 10, 2020."  Dkt. No. 1 ¶ 23.  DOL confirmed that the December 10 Court Order was the only reason for the decision to disclose the information.[1]  *See* Dkt. No. 25 ¶ 30.  Following the Court's issuance of a stay order on February 7, 2020, DOL informed Synopsys that "DOL will not release any EEO-1, Type 2 reports at issue in this matter on February 10, 2020" in light of the stay order.  Dkt. No. 24-1 ¶ 9; Dkt. No. 25-1 at 77.   But stayed or not, the December 10 Order remains fundamental to the agency decision to disclose and is thus essential to this Court's APA review.  Absent an agency decision to disclose, there can be no reverse FOIA action, *see John Doe #1 v. Veneman*, 380 F.3d 807, 814-15 (5th Cir. 2004),[2] and the only agency decision to disclose here was made in order to comply with the Court's order.  *See* Dkt. No. 25 (Geán Decl.) ¶ 30. To suggest that the Court's December 10 Order compelling disclosure is somehow beside the point because of the subsequent stay is untenable in this reverse FOIA action.  DOL made no other decision to disclose the information, and there can be no reverse FOIA action in the absence of such a decision.  To review DOL's decision to release the information without regard to this Court's order forcing that decision would abrogate the very authority under which this reverse FOIA litigation is brought.

---

[1] Synopsys argues that the government is "trying to have it both ways" by arguing in this action that the sole basis for its intended disclosure is the Court's December 10 Order, while asserting that it retains discretion under FOIA to release the documents even if the Court's order were reversed.  *See* Dkt. No. 26 at 7.  These positions are not inconsistent: this reverse FOIA case is limited to a review of the final agency decision that was actually made—the decision to release in compliance with the Court order—not whether some hypothetical decision to release in the future might be arbitrary and capricious. Nevertheless, since filing its opposition to the motion to intervene, DOL has clarified its position with respect to discretionary prospective release and confirmed that it will not release the EEO-1 reports in the event that the December 10 Order is reversed.  DOL has communicated this clarification to Synopsys and CIR and will request leave to file a supplemental brief in connection with the motion to intervene in the *CIR* FOIA Action in accordance with this clarification.

[2] The APA limits judicial review to an "'agency action' that is 'final.'"  *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004)); 5 U.S.C. §§ 702, 704.  To be considered "final," the agency action must be (1) the "consummation of the agency's decisionmaking process," and; (2) an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).

**2.     The December 10 Order Is Not Merely a Procedural Obstacle But Is Central To The Merits Of This APA Challenge.**

DOL is not making merely "procedural objections" or arguing that the Court's order "immunizes" agency review.  To the contrary, DOL is the only party in this case that has engaged in a full analysis of the merits of this dispute under the appropriate APA framework.  *See* Dkt. No. 24 at 10-13.  APA review requires a court to consider whether the specific agency action under review is "arbitrary and capricious."  *See Pacific Architects and Engineers Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347-78 (9th Cir. 1990).  The APA's arbitrary or capricious standard is a "deferential standard of review under which the agency's action carries a presumption of regularity."  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014).  The reviewing court's role is not to weigh the evidence or determine the wisdom of the decision de novo but simply to determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376-78 (1989).  Whether the agency decision is arbitrary and capricious thus requires an examination of the agency's rationale for that decision.  *See FCC v. Fox Television Stations, Inc.*, 566 U.S. 502, 515 (2009).

This Court's December 10 Order requiring disclosure thus lies at the heart of the merits of this APA dispute because that Order is the only reason that DOL intends to disclose the EEO-1 reports at issue.  To be clear, DOL is not taking the position that this Order *precludes* APA review but rather that the Order is central to this Court's substantive APA review under the arbitrary and capricious standard.  Synopsys's suggestion that DOL is engaged in some sort of procedural dodge is based on its own mistaken understanding of the scope and nature of APA review.

**3.     The Applicability Of Exemption 4 Is Not "The Central Merits of Synopsys' Claim."**

Synopsys asserts that DOL has "conceded" the "central merits of Synopsys' claim" because it does not engage in a de novo analysis of the applicability of Exemption 4.  Dkt. No. 26 at 2-3.  Synopsys is incorrect on both counts:  the Exemption 4 issue is not the "central merits" of this action, and DOL has not "conceded" the merits of Synopsys's claim.

As discussed above, this is a reverse FOIA claim brought under the APA, not a direct FOIA case

1   where the applicability of an exemption is the dispositive issue before the court.  Indeed, Synopsys could

2   not bring a direct FOIA case under the circumstances here.  The only issue presented to the Court in this

3   action is whether it was arbitrary and capricious for DOL to decide to release the requested documents

4   in compliance with the Court's December 10 Order.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18

5   (1979).  In a typical reverse FOIA case, the agency has made the voluntary decision to release the

6   documents after analyzing the applicability of the exemption itself and determining that the exemption

7   does not cover the requested documents.  *See id.* at 287.  This agency determination—that the exemption

8   does not apply—is then reviewed by the district court, under the deferential arbitrary and capricious

9   standard, which will involve consideration of whether the agency's decision was sufficiently supported.

10  This review therefore may involve substantive consideration of the Exemption 4 factors—but only

11  because the agency decision itself is based on an analysis of these factors.  Even then, the district court

12  does not consider the applicability of the exemption de novo, or evaluate additional evidence in support

13  of the exemption that was not presented to the agency.  *See Pacific Architects*, 906 F.2d at 1348.[3]

14         This case is different.  DOL did not voluntarily decide to release the documents after a

15  determination that Exemption 4 did not apply.  Indeed, the agency's own analysis was that the

16  exemption *did* protect these documents.  This Court, therefore, is not reviewing a decision by DOL

17  regarding the substantive merits of Exemption 4, and DOL's defense of its decision does not implicate

18  that analysis.  Synopsys's position—that DOL must affirmatively argue that the information is *not*

19  confidential commercial information subject to FOIA Exemption 4, under penalty of "conceding" the

20  merits of this action—is untenable.  The information is subject to disclosure under FOIA, and thus

21  outside the protection of Exemption 4, because this Court so ruled on December 10, 2020.  DOL is

22  bound by that determination.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

23  Beyond that indisputable fact, the substantive merits of the Exemption 4 issue are simply not relevant to

24  this Court's APA review, and thus DOL's "failure to address" Synopsys's argument is not a concession

25

26         [3] Except in certain narrow circumstances, judicial review of an agency action under the APA is
    limited to the administrative record.  *Center for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450
27  F.3d 930, 943 (9th Cir. 2006).  Synopsys has not suggested here that the "agency factfinding
    procedures" were inadequate.  *See Pacific Architects*, 906 F.2d at 1348.  The additional evidence that
28  Synopsys is asking the Court to consider in this action, therefore, is improper.

1   of Exemption 4 protection, much less an admission that its actions were arbitrary and capricious.  DOL

2   is not proposing to release information that it claims is presently protected by Exemption 4 (or the Trade

3   Secrets Act)—to the contrary, it has accepted the Court's conclusion that the information is *not* so

4   protected and has declined to take an appeal on that issue.

5       **B.    DOL's Decision To Release The EEO-1 Reports To Comply With This Court's
             Order Cannot Be Arbitrary And Capricious.**

6

7           To prevail on these cross-motions, Synopsys must demonstrate that DOL's decision to release

8   records to comply with the December 10 Order—the only agency action under review—was arbitrary

9   and capricious.  In its motion for summary judgment, DOL applied the requisite APA framework to

10  explain why this decision was not and cannot be arbitrary and capricious.  *See* Dkt. No. 24 at 10-13.

11  Synopsys's only attempt to apply the proper standard of review is its assertion that "disclosure of the

12  records under FOIA would be arbitrary and capricious, and contrary to law where the government itself

13  believes the records to be protected by Exemption 4."  Dkt. No. 26 at 5.  This argument cannot

14  withstand logical scrutiny.  First, the premise is faulty.  Once a lawsuit is filed, the district court

15  adjudicates whether the government may avoid disclosing the requested information pursuant to a FOIA

16  exemption.  Whatever the agency's position on withholding the requested information prior to judgment,

17  the court's order determines whether those exemptions apply and what records must be disclosed.  Here,

18  although DOL defended its withholding under Exemption 4 in the *CIR* FOIA Action, the Court

19  concluded that the requested records are *not* protected by Exemption 4, and that ruling binds DOL here.

20          Second, Synopsys's conclusion—that disclosure is necessarily arbitrary and capricious where the

21  government believes an exemption to be applicable—is incorrect.  Under Synopsys's reasoning, any

22  time an agency invokes a FOIA exemption to avoid disclosing documents and the court rules in favor of

23  the plaintiff, the agency's subsequent release of documents in compliance with the court order would be

24  arbitrary and capricious.  But in every such case litigated under FOIA, the agency believes that the

25  records are protected from disclosure under a FOIA exemption.  In every such case, the agency must

26  ultimately disclose the documents that it previously argued were properly withheld.  To suggest that the

27  agency decision to comply with the court order in these cases is somehow arbitrary and capricious

28  because it defended the exemption in court is a radical derogation of the district court's authority.

1   Rather, in order to assess the reasonableness of the agency's decision in an APA case, it is always the

2   case that the *reasoning* behind the decision must be evaluated. In this case, faced with an order

3   compelling disclosure, DOL's decision was not just reasonable but unavoidable.

4   While Synopsys argues that "unexplained inconsistency is classic agency caprice," Dkt. No. 26

5   at 5, DOL's actions here are neither inconsistent nor unexplained. DOL took the position in the *CIR*

6   FOIA Action that the reports were protected from disclosure under Exemption 4, a position that was

7   reasonable and defensible but that was ultimately rejected by the Court. DOL subsequently took the

8   position that it would disclose the records because the Court had determined that they were not covered

9   by Exemption 4. There is thus a clear, logical, and rational explanation for DOL's decision to disclose:

10  it was required to do so by the Court, based on the Court's conclusion that DOL could not invoke

11  Exemption 4 to withhold the information. This is undoubtedly a "reasoned explanation for [DOL's]

12  action." *See FCC*, 556 U.S. at 515. The arbitrary and capricious standard requires nothing more.

13  Indeed, to suggest otherwise—to require an agency to disobey a valid court order if it disagrees

14  with the court's legal conclusion—would expose the agency to contempt of court proceedings and

15  undermine the rule of law. As DOL explained in its opening brief, parties cannot ignore valid court

16  orders whenever they believe the Court was wrong. This is true whether, as here, the order *requires* the

17  disclosure of documents under FOIA or, as in *GTE Sylvania v. Consumers Union*, 445 U.S. 375, 386

18  (1980), the first court *enjoins* the disclosure of documents under a different statute. The lesson is the

19  same: parties "are expected to obey [a court's] decree until it is modified or reversed, even if they have

20  proper grounds to object to the order." *GTE Sylvania*, 445 U.S. at 386.[4]  Thus, while Synopsys argues

21

22

23  [4] Synopsys asserts that the *GTE Sylvania* case is inapposite because in that case the reverse FOIA action was filed first, followed by a direct FOIA case filed by the requester after the court had entered an injunction in the first case prohibiting release. But the reverse sequencing of the cases in *GTE Sylvania* has no bearing on the principle for which it is cited (and which Synopsys fails to address entirely): that once a court order is entered, it is binding on the government and justifies the government's actions taken in compliance with that order. In *GTE Sylvania*, the Court held in the second case that the documents were not "improperly" withheld under FOIA because of the court order forbidding their disclosure. Analogously, disclosure of the reports here cannot be "arbitrary and capricious" because of the court order requiring their disclosure. The lesson of *GTE Sylvania* is dispositive in either context. Indeed, it applies with even greater force here because of the deferential standard governing review of agency decisions in APA cases. DOL is not arguing, as Synopsys suggests, Dkt. No. 26 at 3, that *GTE Sylvania* forecloses APA review altogether; rather, *GTE Sylvania* forecloses the argument that the agency action here was arbitrary and capricious.

24

25

26

27

28

1   that DOL has "no discretion to disclose records on a legal basis that the agency concedes is incorrect,"

2   Dkt. No. 26 at 5, in fact the opposite is true:  DOL has no discretion *not* to disclose records that have

3   been ordered produced by a valid Court order.

4          For the same reason, DOL's action cannot be arbitrary and capricious under the Trade Secrets

5   Act, even if that issue were properly before the Court.[5]  DOL's opening brief explains that disclosure of

6   the information in compliance with a lawful court order cannot violate the TSA.  Dkt. No. 24 at 15-17.

7   The TSA prohibits the disclosure of certain confidential records only to the extent *not authorized by law*.

8   Contrary to Synopsys's assertion, Dkt. No. 26 at 3, DOL vigorously disputes that the TSA bars DOL's

9   anticipated release.  *See* Dkt. No. 24 at 15-17.[6]  Disclosure of the records here would be authorized by

10  law:  first, by virtue of the Court's December 10 Order, which would be disclosure "made in obedience

11  to process lawfully issued in a judicial . . . proceeding," *Blair v. Oesterlein Mach. Co.*, 275 U.S. 220,

12  227 (1927), and second by FOIA, in light of the Court's decision that Exemption 4 does not cover these

13  records.  Synopsys's only response to the first point is that the December 10 Order cannot provide legal

14  authorization under the TSA because it is stayed.  Dkt. No. 26 at 6.  But that argument is premised on an

15  inherent fallacy:  the documents will not be disclosed as long as the order is stayed.  The documents will

16  only be released if the stay is lifted, pursuant to the December 10 Order.  This reverse FOIA dispute is

17  justiciable, therefore, only if and to the extent the December 10 Order requires disclosure.  The stay

18  order is thus a red herring in this analysis.[7]  The December 10 Order requiring disclosure means that any

19  release of the records by DOL (which would occur only pursuant to that order) cannot violate the TSA.

20

21          [5] This theory is not included in Synopsys's complaint and has thus not properly been presented to
    the Court.  *See* Dkt. No. 24 at 14-15 and *infra* Part II.C.

22          [6] Indeed, even if the records were covered by Exemption 4 under the new *Argus Leader* standard,
23  Synopsys has not established that disclosure would be barred by the TSA, as is its burden on these cross-
    motions for summary judgment.  It has cited cases that predate *Argus Leader*, when the Exemption 4 bar
24  was considerably higher, and does not analyze, even in its reply brief, whether TSA remains coextensive
    with Exemption 4 following the change in law.  *See* Dkt. No. 24 at 15 n.2.  Synopsys has the burden of
25  establishing its entitlement to nondisclosure in this reverse FOIA case, *see Frazee v. U.S. Postal Serv.*,
    97 F.3d 367, 371 (9th Cir. 1996), and in failing to explain the scope of TSA post-*Argus Leader*, it cannot
26  satisfy that burden.

27          [7] *See Texas Retailers Ass'n v. United States Dep't of Agric.*, 752 F. App'x. 202, 203 n.1 (5th Cir.
    2019) (vacating preliminary injunction preventing disclosure of documents in reverse FOIA case even
28  though disclosure order in a sister circuit was stayed, and instructing district court that if the case
    proceeded, "it must explain why any disclosure ordered by courts in a sister circuit to which, as here,
    jurisdiction first attached, is not 'authorized by law' pursuant to the Trade Secrets Act").

1    In addition, as a separate reason why the TSA would not bar disclosure here, DOL argues that

2    release would be "authorized by law" under FOIA in light of the Court's conclusion that no exemption

3    protected the material. Dkt. No 24 at 16-17. Synopsys claims that this contention was "implicitly rejected"

4    in *Chrysler* "in this very context," Dkt. No. 26 at 6, but in fact the context in *Chrysler* was diametrically

5    different:  in that case, the district court found, and the Court of Appeals assumed, that the material was

6    *protected* by Exemption 4. *See Chrysler*, 441 U.S. at 288, 319 n.49. DOL's argument is that FOIA

7    provides a separate source of legal authority for purposes of TSA where, as here, a court decides that the

8    material is *not* covered by any exemption. *See* Dkt. No. 24 at 16-17 (citing cases). Synopsys has no

9    response to that argument, apart from repeating the assertion that DOL cannot "in good faith argue" that the

10   information is not protected by Exemption 4. Dkt. No. 26 at 6. To the contrary, the Court has resolved this

11   issue, deciding that the information falls outside Exemption 4, and DOL must proceed accordingly.

12   DOL emphasized in its opening brief that it is unaware of *any* reverse FOIA case that has been

13   successfully brought following a judgment requiring disclosure in a direct FOIA suit. Dkt. No. 24 at 13.

14   Synopsys did not identify any such cases in its opening brief, and it similarly failed to cite any in its

15   reply.[8] As DOL argued in its opening brief, Synopsys is asking the Court to put agencies in the

16   impossible position of  choosing between violating the APA and violating a lawful court order. *Id.*

17   Synopsys has no response to this argument. The reason for Synopsys's silence is obvious:  disclosure of

18   records pursuant to a lawful court order cannot be arbitrary and capricious.

19   **C.    Synopsys's Post-Judgment Reverse FOIA Action Is Not Sanctioned By The
         Government's Position In *Argus Leader*.**

20

21   In defense of this reverse FOIA action, Synopsys protests that DOL cannot object to this action

22   because Synopsys is following "the government's own roadmap" as laid out in the United States' amicus

23   brief in *Argus Leader*. Dkt. No. 26 at 6 (emphasis omitted). But Synopsys mischaracterizes both the

24   government's position in *Argus Leader* and Synopsys's own filings in these related cases. The United

25

26        [8] In *Weisberg v. U.S. Dep't of Justice*, 631 F.2d 824 (D.C. Cir. 1980), which Synopsys cites to
     distinguish *GTE Sylvania*, Dkt. No. 26 at 4, the second suit was not a reverse FOIA action but a direct

27   infringement lawsuit brought under the Copyright Act. The plaintiff in the second suit therefore was not
     asking the court to find that the agency's intended compliance with court-ordered disclosure was

28   arbitrary and capricious. Even in that case, moveover, the D.C. Circuit did not resolve the question of
     whether disclosure would be improper in light of the third party's copyright.

States has consistently taken the position, as dictated by *Chrysler*, that FOIA does not provide a submitter any right to enjoin agency disclosure, and therefore a submitter cannot rely solely on FOIA exemptions to "impose affirmative duties on an agency to withhold information sought."  441 U.S. at 294.  A submitter seeking to enjoin agency disclosure must therefore rely on some other source of law.  The United States has never suggested—in *Argus Leader* or otherwise—that a post-judgment reverse FOIA action is a proper way to assert this interest.  To the contrary, in a companion case to *Argus Leader*, the government vigorously contested an attempt to file precisely this sort of reverse FOIA action after a court order requiring disclosure had been upheld by the Court of Appeals in *Argus Leader*.  *See Texas Retailers Ass'n v. United States Dep't of Agriculture*, 752 F. App'x. 202, 203 (5th Cir. 2019).[9]  In waiting to file this action until *after* judgment was entered in the *CIR* FOIA Action, Synopsys has departed fundamentally and conclusively from the course outlined by the United States' in its *Argus Leader* amicus brief.

Second, central to the United States' position in *Argus Leader* was the reliance on an independent, non-FOIA source of law.  Although Synopsys claims that its reverse FOIA claim is "premised on two independent legal theories," Dkt. No. 26 at 5, in fact only one legal theory—based exclusively on FOIA—appears in its complaint.  Although Synopsys attempts to salvage its pleading by arguing that the proper theory of relief "'need not be pleaded as long as sufficient factual averments show that the claimant may be entitled to some relief,'" Dkt. No. 25 at 5, Synopsys's complaint relies exclusively on FOIA and does not show that Synopsys is entitled to *any* relief under the established principle articulated in *Chrysler*.  There is no mention of the Trade Secrets Act whatsoever in the complaint, nor does Synopsys provide any allegations that would support a conclusion that disclosure of documents covered by Exemption 4 as interpreted by *Argus Leader* would violate the Trade Secrets Act.  Nor does Synopsys argue that the TSA theory was in its complaint all along and merely mislabeled.  *Cf. Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).  Instead, Synopsys seeks to amend its complaint in its summary judgment filing to *add* a new theory, insisting that despite the single, FOIA-based claim asserted in its pleading, it is actually entitled to relief under two independent sources of law.

---

[9] DOL requests this Court to take judicial notice of the government's briefing in the *Texas Retailers* appeal, No. 18-50895 (5th Cir.).  In that case, the government argued, *inter alia*, that the *Argus Leader* lower court decisions required USDA to disclose the disputed records, and therefore such disclosure in compliance with the court order could not be unlawful under the APA or the TSA.

1    Ninth Circuit law is clear:  a party cannot rely on unpleaded legal theories in summary judgment

2    motions.  *See* Dkt. No. 24 at 15 (citing cases).  Where, as here, the only legal theory asserted in the

3    complaint is invalid, summary judgment must be granted in DOL's favor.

###    D.    Synopsys's Desire For A Second Bite Of The Apple Does Not Justify The Perversion Of The APA Framework That It Urges Here.

6    Finally, Synopsys appeals to the Court to consider the merits of its Exemption 4 argument here

7    so it is not deprived of its "day in court," arguing that DOL is trying it to "box Synopsys out of *both*

8    actions."  Dkt. No. 26 at 7 (emphasis in original).  Although Synopsys lays the blame for its

9    predicament on DOL, the legal infirmities of Synopsys's position are due to its own litigation choices.

10   Synopsys's post-judgment maneuvering has simply come too late.  The direct FOIA case has concluded.

11   This Court has entered judgment.  In trying to relitigate an issue that was fully considered, with

12   Synopsys's knowledge and participation, in the now-closed *CIR* FOIA action, Synopsys seeks to impose

13   its own agenda and timeline on the Court, *CIR*, and DOL, to the prejudice of all.  Synopsys has not been

14   deprived of its "day in court"—it had an opportunity, while the direct case was pending, to be part of the

15   proceedings.  It declined to do so, apparently content to allow DOL to litigate on its behalf.  Only now,

16   in the face of an adverse ruling, is Synopsys trying to re-open the courthouse door, in violation of "the

17   principle that interested parties should assert their interests in ongoing judicial proceedings before—not

18   after—the court reaches judgment."  *Paisley v. C.I.A.*, 724 F.2d 201, 203 (D.C. Cir.).  Moreover, even if

19   the Court were sympathetic to Synopsys's desire to relitigate the Exemption 4 issue, it cannot justify the

20   wholesale abrogation of the APA framework that Synopsys proposes here.  Synopsys cannot establish

21   that the government has acted arbitrarily or capriciously, and DOL is entitled to judgment as a matter of

22   law on Synopsys' reverse FOIA claim.

23   ## III.    CONCLUSION

24   For the foregoing reasons, and the reasons set forth in DOL's opening brief, summary judgment

25   should be entered in its favor in this action, and Synopsys's motion for summary judgment should be

26   denied.

27

28

1   DATED: April 3, 2020            Respectfully submitted,

2                                DAVID L. ANDERSON
                                 United States Attorney
3

4                                */s/ Pamela T. Johann*
                                 PAMELA T. JOHANN
5                                 Assistant United States Attorney

6                                 Attorneys for Defendant